IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| V. | : | CRIMINAL NUMBER 12-623-03 |
| | : | |
| | : | |
| ROBERT KESZEY | : | |

### O R D E R

**AND NOW,** this _____ day of _____, 2013, upon consideration of Defendant Robert Keszey's Motion for a New Trial Pursuant to Federal Rule of Criminal Procedure 33, and the government's response thereto, it is hereby **ORDERED** that Defendant's Motion is **GRANTED**. A new trial will be held on a date consistent with the Court's calendar.

BY THE COURT:


_____
**THE HONORABLE JUAN R. SANCHEZ**
**United States District Court Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| V. | : | CRIMINAL NUMBER 12-623-03 |
| | : | |
| | : | |
| ROBERT KESZEY | : | |

**DEFENDANT'S MOTION FOR A NEW TRIAL
PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33**

Defendant Robert Keszey hereby moves for a new trial pursuant to Federal Rule of Criminal Procedure 33. The facts and law supporting this motion are set forth in the accompanying Memorandum of Law, incorporated here by reference. The defendant respectfully requests an additional 30 days, following receipt of the trial transcripts in this case, to supplement the instant Motion.

**WHEREFORE**, for the reasons set forth in the accompanying Memorandum of Law, and any supplemental motions and memoranda, Robert Keszey respectfully requests that the Court grant a new trial in this case.

          Respectfully submitted,


            /s/ Felicia Sarner
          FELICIA SARNER
          Assistant Federal Defender
          Attorney for Robert Keszey
          NANCY MacEOIN
          Research and Writing Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| V. | : | CRIMINAL NUMBER 12-623-03 |
| | : | |
| | : | |
| ROBERT KESZEY | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR A NEW TRIAL PURSUANT TO
<u>FEDERAL RULE OF CRIMINAL PROCEDURE 33</u>**

On November 15, 2013, a jury convicted defendant Robert Keszey of Count One of the indictment, charging criminal conspiracy in violation of 18 U.S.C. § 371. Co-defendant Robroy MacInnes was convicted of the conspiracy count, along with Count Two, a violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(1)(A) and 16 U.S.C. § 3773 . Each conviction was based on alleged incidents dating back to 2006 and involved the possession and transport of snakes in violation of various state and federal laws.

Robert Keszey moves for a new trial under Rule 33, as the verdict was based on evidence erroneously admitted at trial, evidence erroneously prohibited from the trial, and errors in the jury instructions delivered by the Court at the close of the case. As such a new trial is necessary in the interests of justice.

The transcripts of the trial have been requested but not yet received. The defense respectfully requests an additional thirty (30) days, following receipt of the trial transcripts, to supplement the instant pleading if that is deemed necessary.

I.   **THE OUT-OF-COURT STATEMENTS OF JUSTIN MUNSTERMAN TO LIEUTENANT THOMAS WERE ERRONEOUSLY ADMITTED DURING THE TRIAL**

In its trial memorandum, the government provided notice that it intended to introduce an out-of-court statement made by Justin Munsterman, under the co-conspirator exception to the hearsay rule, Fed.R.Evid.801(d)(2)(E).  Munsterman was a cooperating defendant who the government was not calling to testify at trial. The alleged statement was made to undercover New York law enforcement officer Lieutenant Richard Thomas, while Munsterman was selling two juvenile timber rattlesnakes to the officer. During the sale, Munsterman allegedly stated that he was selling the rest of the timber rattlesnakes to the guy from Pennsylvania (Loren Zuck), who works for Glades and would be sending the snakes to Glades in Florida     In a pre-trial motion in limine, the defendants moved to exclude Munsterman's out-of-court statement, on the ground that the statement was hearsay: it was an out-of-court statement offered for the truth of the matter asserted, and it was not made in furtherance of the conspiracy.  The defense later supplemented its objection on the ground that its admission violated the Confrontation Clause of the Fifth Amendment.

The Court agreed with the defense that the statement was inadmissible on the grounds proffered by the government, but ruled it admissible, over objection, under the state of mind exception found at Fed.R.Evid. 803(3).  Justin Munsterman did not testify at trial, and the alleged out-of-court statement was testified to by Lt. Thomas. At various points, additional out of court statements by Munsterman were also admitted over objection, including that the defendants allegedly wanted to get the snakes before attending a reptile show in Germany, where they could be sold at higher prices than in this country.

2

> Fed.R.Evid. 803 reads in relevant part as follows:
>
> Rule 803. Exceptions to the Rule Against Hearsay--Regardless of Whether the Declarant Is Available as a Witness
> \* \* \*
> (3) *Then-Existing Mental, Emotional, or Physical Condition.* A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Admission of Munsterman's out of court statements was erroneous and highly prejudicial to the defense. First, Justin Munsterman's state of mind was not relevant to this case. Next, as this was multiple hearsay (statements allegedly made by the defendants to Loren Zuck who then relayed them to Justin Munsterman, who then told Lt. Thomas), this evidence was unreliable and its veracity could not be tested through cross examination. Moreover, the statements at issue were of Munsterman's memory or belief (that the snakes were going to Glades in Florida, and then on to Germany where they were worth more money) to prove the fact remembered or believed.  The government offered these statements for the purpose of proving the truth of what Munsterman remembered or believed, so as to corroborate and bolster the credibility of the trial witnesses, primarily Loren Zuck. It then went on to argue them for their truth during closing argument to the jury. This is specifically prohibited under the plain language of Fed.R.Evid. 803(3).

The error was compounded by the fact that the alleged Munsterman statements, which became key to the government's case, were not recorded by the wire worn by Lt. Thomas.  It appeared in one of  Lt. Thomas' reports regarding his work with Justin Munsterman in an

undercover capacity. Before trial, the defendants requested the actual audio recordings of the conversations between Justin Munsterman and Lt. Thomas. These recordings were provided to the defense after the start of trial. Upon examination, these key statements allegedly made by Justin Munsterman appeared nowhere on the recordings provided to the defense.

As the statements were erroneously allowed into evidence at trial under Fed.R.Evid. 803(3), despite the plain language of the rule, the defendants were enormously prejudiced by the admission. A new trial is therefore warranted.

**II.     EVEN IF THE STATEMENTS WERE PROPERLY ADMITTED, A NEW TRIAL IS WARRANTED BECAUSE THE GOVERNMENT IMPERMISSIBLY ARGUED THE HEARSAY STATEMENTS FOR THE TRUTH OF THE MATTER ASSERTED**

As set forth above, the defense maintains that Munsterman's statements were erroneously admitted at trial. This error was compounded when the government impermissibly argued the statements for their truth, thus improperly bolstering the credibility of Zuck and other trial witnesses. This is prohibited under the "state of mind" exception to hearsay under Fed.R.Evid. 803(3) – specifically not for the truth of the matter asserted. With the Court's permission, the defense will supplement this argument after receiving and reviewing the trial transcripts from this case

**III.    THE COURT IMPERMISSIBLY DENIED THE DEFENDANTS AN OPPORTUNITY TO PRESENT THEIR DEFENSE BY PROHIBITING QUESTIONS AND EVIDENCE REGARDING THE MULTIPLE LEGAL SOURCES AND NATURAL BREEDING CYCLE OF TIMBER RATTLESNAKES, AND BY NOT ADMITTING THE RECORDED CONVERSATION BETWEEN ZUCK AND INVESTIGATOR SULLIVAN**

The theory of defense in this case was that the defendants had multiple legal sources of timber rattlesnakes available to the Glades business to explain why they appeared on their

website in October 2008 and in their shipment to Germany that same month. It was likewise critical that the jury hear affirmative evidence regarding the natural breeding cycle of timber rattlesnakes, which is that they give birth in the late summer and early fall each year, making them plentiful up and down the east coast and throughout 31 states at that time of year. Without that knowledge, the jury was left to erroneously conclude that the snakes which appeared on the website and those that were shipped to Germany must have come from Zuck or another illegal source.

     The Court erroneously prohibited the defense from cross examining knowledgeable government witnesses about the fact that timber rattlesnakes are not protected and entirely legal in a number of states, or are available through licensed breeders in many other states. It likewise prohibited questions about the breeding cycle of timber rattlesnakes, to establish that timber rattlesnake offspring are born at precisely the time of year that was at issue in this case. The Court prohibited the defense from eliciting such testimony, but at the same time it permitted the government to question its witnesses about other aspects of the timber rattlesnakes' habitation, feeding behavior, color phases, etc.

     On numerous occasions, the government objected to defense questions of witnesses regarding the breeding cycle of timber rattlesnakes, their prevalence, their availability in other states, and the places where timber rattlesnakes could be legally obtained.  These objections were improperly sustained by the Court.  These questions sought to illicit information which went to the heart of the defense in this case: the timber rattlesnakes which appeared on the Glades website in the fall of 2008, those that were purchased by Agent Randy Cottrell, and those that were shipped to Germany, were much more likely to have been obtained from legal sources than

5

from Zuck or any other polluted source. Additionally, because Glades had multiple legal sources for timber rattlesnakes, it had no incentive to purchase snakes illegally through Loren Zuck. By sustaining the government's objections, the Court denied the jury a full understanding of the facts involved in this case, thereby denying the defendants a fair trial.

Likewise, the Court erroneously prohibited the defense from eliciting this critical evidence from its own witnesses, whether as expert or lay testimony. Each defense witness that testified had years of experience in the reptile collection or sales industry and were fully competent to testify to the critical facts addressed above, but the Court would not allow it.

Throughout the trial, Loren Zuck's credibility was hotly contested. The defense maintained that Loren Zuck had a motive and incentive to keep the timber rattlesnakes obtained from Justin Munsterman and Darren Paolini for himself. The defense in this case was that Loren Zuck kept the snakes and after the federal investigation turned to him, he lied about transferring them to Glades Herp Farms in an attempt to lessen law enforcement's focus on him. The defense theory was corroborated by fact that Loren Zuck made multiple contradictory statements to law enforcement about the facts of this case, including an eleventh-hour change to the time frame of events by a year.

It was for these reasons that the defense sought to introduce the recorded conversation between Loren Zuck and Investigator Dan Sullivan. *See* Defense Trial Exhibits 2 and 3 (recording and transcript of the call). This conversation details the incentive Loren Zuck had to lie in order to shift blame and focus to the defendants. Investigator Sullivan outlined the evidence they had against Loren Zuck and told him that the focus of the investigation would be switched to Glades and the defendants if Loren Zuck were "encouraged" or "pressured" by the

6

defendants to illegally collect timber rattlesnakes from the wild. After five separate times in the conversation where the agent tells Zuck how much easier things will go for him if Glades encouraged or pressured him to collect wildlife illegally for them, Zuck finally said, "I understand what you are saying." He then proceeded to "cooperate" in a manner that followed Sullivan's script, recounting over eight proffer sessions more and more times the defendants pressured him in this way or made him take them "herping" or "field collecting" with him.

This conversation was not sought to be admitted for the truth of the matter asserted but to show Loren Zuck's state of mind when he spoke to law enforcement, the impact that conversation had on him, and his actions in conformity therewith. By excluding this key piece of evidence from trial, the jury was not presented with crucial information regarding Loren Zuck's motive to lie to law enforcement and testify falsely. As such, the defendants were denied a full and fair opportunity to present a defense and a new trial is warranted.

## IV.   THE COURT ERRONEOUSLY ADMITTED EVIDENCE OF THE GERMANY SHIPMENT UNDER FED.R.EVID. 404(b) AND UNDULY PREJUDICIAL UNDER FED.R.EVID. 403

The defense objection to admission of this evidence was erroneously overruled. There was insufficient evidence to conclude that the snakes sent to Germany in early October, 2008, came from Loren Zuck or any illegal source. As such, it was mere conjecture at best to regard the shipment of reptiles to the Germany show as a prior "bad act" within the meaning of the Rule.

Because, as argued above, the defense was prohibited from introducing evidence of the multiple legal sources of timber rattlesnakes that were available to Glades, especially at that time of year (when timber rattlesnakes give birth), the jury was left to erroneously conclude that the snakes shipped to Germany came from Zuck or another illegal source. If not, the Germany

shipment would have had no relevance to the case, in the eyes of the jury.

Moreover, Zuck was erroneously permitted to testify, over objection, to his belief that timber rattlesnakes are more valuable in Germany and Europe than they are here in the United States. There was no foundation for this testimony, and his belief as to the value of the snakes overseas was irrelevant to the case.

Admission of the Germany shipment was erroneous under the prior bad act theory and whatever relevance it may have had was substantially outweighed by its prejudice to the defense, especially in light of the Court's refusal to allow the defense to explain through evidence and cross examination the likelihood that the shipment contained timber rattlesnakes that were lawfully obtained.

### V.   MR. KESZEY WAS ERRONEOUSLY PROHIBITED FROM INTRODUCING GOOD CHARACTER EVIDENCE, IN VIOLATION OF FED.R.EVID. 403

Prior to trial, the government sought to introduce evidence, pursuant to Fed.R.Evid. 404(b), that co-defendant MacInnes had a prior Lacey Act misdemeanor conviction and that MacInnes and Glades were also sanctioned civilly <u>before</u> Mr. Keszey became involved with the business. After MacInnes and Robert Keszey became partners and formed Glades Herp Farm, Inc., the new company could not get its import/export license until MacInnes paid for his earlier civil sanctions. Under those circumstances, Robert Keszey, new partners with MacInnes, signed off on a settlement agreement so that Glades could get its import/export license. The Court ruled pretrial that such evidence was not admissible under Rules 404(b) and 403.

Robert Keszey had no involvement in the misconduct that led to the civil sanctions and the settlement agreement that he ultimately signed off on. He also had no criminal record that the

government sought to introduce,[1] and wanted to elicit opinion evidence at trial of his good character for being an honest, law abiding citizen. When he attempted to elicit this evidence from a defense witness, the Court ruled at sidebar that if Mr. Keszey introduced good character evidence, it would permit cross examination of the <u>civil</u> settlement agreement that Mr. Keszey signed off on when he first became business partners with co-defendant MacInnes. As noted, the civil settlement stemmed entirely from sanctions that were earlier placed upon MacInnes' company, <u>before</u> Mr. Keszey became involved in the business. The Court's ruling was erroneous and unfairly prejudicial within the meaning of Fed.R.Evid. 403.

In light of the Court's evidentiary ruling, Mr. Keszey was placed in an untenable position, and opted not to introduce good character testimony. Evidence of the prior civil settlement is not proper rebuttal to good character evidence, and could have led the jury to conclude that there was a pattern of misconduct on the part of the business, even though Mr. Keszey had no part in the earlier misconduct. The risk of guilt by association was strikingly apparent and too great a risk to take.

The Court's ruling unfairly inhibited Mr. Keszey's right to introduce evidence of his good character, and argue to the jury that such evidence alone could raise a reasonable doubt. The probative value of cross examining Mr. Keszey about the civil settlement – all of which stemmed from MacInnes' prior conduct and that of MacInnes' prior company – was greatly outweighed by the importance of Mr. Keszey introducing evidence of his good character to the jury.  The defense respectfully asserts that it was error to hamper Mr. Keszey's efforts to present good

---

[1] It appears that Mr. Keszey has a summary disorderly conduct violation from decades ago.

9

character evidence with the threat of sullying the prior business' reputation in the eyes of the jury and confusing the issues for them. A new trial is warranted under these circumstances.

## VI. THE COURT'S DENIAL OF REQUESTED JURY INSTRUCTION REGARDING THE THEORY OF THE DEFENSE DENIED THE DEFENDANTS A FAIR TRIAL

The defense's request for a jury instruction regarding the theory of the defense was erroneously denied by this Court. The proposed instruction read as follows:

> It is the theory of the defense in this case that Loren Zuck never shipped timber rattlesnakes to Glades Herp Farm and that the September 21, 2008 shipment contained other venomous reptiles. There were multiple legal sources for the timber rattlesnakes that were offered for sale by Glades Herp Farm during the relevant time frame, both domestically and in Germany.

As detailed *supra*, this was the theory of the defense. Under *United States v. Sussman*, 709 F.3d 155, 178 (3d Cir. 2013), a defendant is entitled to a theory of defense instruction where "(1) he proposes a correct statement of the law; (2) his theory is supported by the evidence; (3) the theory of defense is not part of the charge; and (4) the failure to include the instruction of the defendant's theory would deny him a fair trial." *Id.*, citing *United States v. Friedman*, 658 F.3d 342, 352-353 (3d Cir. 2011).

In this case, the evidence presented at trial (while truncated for the reasons cited herein), was consistent with the proposed instruction. The defense was not incorporated as part of the substantive charge. Additionally, failure to include the instruction, compounded with the other errors cited herein, denied the defendant a fair trial. As such, a new trial is warranted.

## VII. THE COURT'S INCLUSION OF THE FALSE EXCULPATORY JURY INSTRUCTION WAS IN ERROR AND PREJUDICED THE JURY

The Court overruled defendant Keszey's objection to the inclusion of the false exculpatory jury instruction. This instruction was given in reference to Robert Keszey's comments to Loren Zuck on recorded calls presented to the jury. The government argued that Robert Keszey's statement that he only received timber rattlesnakes from Jim Harrison in Kentucky was false.

The defense maintains this was not a false exculpatory statement and giving the jury instruction categorizing it as such was error. While Kristen Wiley testified that, to her knowledge, the Kentucky Reptile Zoo only shipped one crate of juvenile timber rattlesnakes to Glades Herp in January 2008, such testimony does not preclude Robert Keszey's statement from being true. As argued at trial, and presented by the defense, Robroy MacInnes had other legal sources for timber rattlesnakes. The evidence supports the assertion that Robert Keszey's only source for timber rattlesnakes was Jim Harrison at the Kentucky Reptile Zoo and that the co-defendant, Robroy MacInnes, had other legal sources. This Court's characterization of the statement as false and giving the false exculpatory jury instruction was in error and prejudiced Robert Keszey. As such, a new trial is warranted.

## VIII. THE COURT ERRED BY NOT GIVING A CLARIFYING INSTRUCTION REGARDING WHICH OVERT ACTS COULD BE CONSIDERED FOR PURPOSES OF THE CONSPIRACY COUNT

On the eve of trial, the government's principal witness, Loren Zuck, changed the timing of the overt acts alleged in the indictment by at least one year, rendering the two Jim Thorpe "field collecting" or "herping" trips, the Pine Barrens "herping" trip, and the shipment of the

Eastern Indigo snakes stale, for purposes of the statute of limitations. As such, the only overt act that the jury was permitted to consider for purposes of the conspiracy count, which is the only count that Mr. Keszey was charged with, was the alleged shipment of timber rattlesnakes by Loren Zuck from Pennsylvania to Florida.

The government's closing argument gave considerable emphasis to the "herping" trips referenced above, along with the Eastern Indigo shipment. In light of the government's emphasis of those alleged acts in its closing, the defense sought a clarifying instruction to the jury, so that it would be clear that in order to convict, the only overt act it must unanimously agree on was the alleged shipment of timber rattlesnakes by Loren Zuck, and that if it could not unanimously agree on that overt act, it must return an acquittal on Count One.

The Court's refusal to give the clarifying instruction requested by the defense was error under these circumstances, as it risked confusion on the jury's part as to which acts it could consider for purposes of the conspiracy count. As such, a new trial is warranted.

## IX.   CONCLUSION

For the reasons stated herein, and as supplemented after receipt and review of the trial transcripts in this case, Mr. Keszey respectfully moves to set aside the verdict and requests a new trial.

Respectfully submitted,

  /s/ Felicia Sarner
FELICIA SARNER
Assistant Federal Defender
NANCY MacEOIN
Research and Writing Attorney

## **CERTIFICATE OF SERVICE**

I, Felicia Sarner, Assistant Federal Defender, Federal Community Defender of Philadelphia, Federal Court Division, hereby certify that I have served a true and correct copy of Defendant Robert Keszey's Motion for a New Trial Pursuant to Federal Rule of Criminal Procedure 33, by electronic notification or hand delivery, upon Patrick M. Duggan, Assistant United States Attorney, office located at 601 D Street NW, Suite 2122, Washington, District of Columbia 20004; and Mary Kay Costello, Assistant United States Attorney, office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106, and Robert Goldman, Esquire, counsel for Robroy MacInnes.

    /s/ Felicia Sarner
FELICIA SARNER
Assistant Federal Defender

Dated:   November 29, 2013